E. FOSTER COOK *v.* TOWN OF WINHALL.

*Soldier's Bounty.    Selectmen.    Towns.    Town Orders.*

The defendant town voted to authorize the selectmen "to raise the number of men sufficient to fill the quota of this town under the last call," etc. The quota was nine men. The selectmen then contracted with C. to furnish the men to fill the quota at a stipulated price, and C. immediately made arrangements with other parties for the men. Subsequently the quota was reduced to six, and the selectmen then notified C. of the reduction, and that "they did not want more men enlisted than enough to fill their quota," C. at the same time informing them of the engagement which he had entered into to procure the men. Nothing more was said, and C. obtained the nine men, according to the contract, and they were mustered in to the credit of the town. *Held* that the town was liable for this number, according to the contract, and the selectmen having given town orders for a portion of the amount which had passed into the hands of the plaintiff in due course of business, the suit was properly brought in his name, town orders being negotiable.

ASSUMPSIT. The case was referred and the referee reported as follows :

That on the 19th day of December, 1864, the President of the United States issued his proclamation calling for 300,000 volunteers, to be furnished by the 15th day of February, 1865. On the 5th day of January, 1865, the selectmen of the town of Winhall called a town-meeting, to be held on the 18th day of said January, which meeting was held in pursuance of the warning. At this meeting the following resolution was passed :

*Resolved,* That the selectmen be authorized to raise the number of men sufficient to fill the quota of this town, under the last call

of the President of the United States for 300,000 volunteers, and pay each one so raised and accepted such sum as in their best discretion they shall see fit to pay in order to raise such men, and are hereby authorized to borrow, upon the credit of the town, such sum as may be necessary for the purpose.

The quotas of the several towns in this state, under said call, were assessed by the A. A. Provost Marshal General for the state, and on the 1st of February the Provost Marshal for the first district of the state, in which the town of Winhall is situated, published the quotas of the towns in said district, and called upon the several towns to furnish the number of men thus assessed against them. In this assessment the number of men required to be furnished by the defendant town was nine.

On the 9th day of February, 1865, two of the selectmen of the defendant town went to Rutland and there entered into a contract with John W. Cramton and T. J. Lyon (who, in connection with Michael Quinn, were then engaged to some extent in the business of procuring men to fill the quotas of various towns in the state), by which the said Cramton, Lyon and Quinn were to procure nine men to fill the quota which had been assessed against said town of Winhall, for which service the said selectmen agreed to pay, for three years' men a bounty of $900 each, and for two years' men a bounty of $800 each, which were about the rates paid at that time. The said selectmen at this time executed to said Cramton and Lyon a writing, of which the following is a copy :

RUTLAND, Vt., Feb. 9th, 1865.

We, the selectmen of Winhall, Vt., hereby authorize John Cramton and T. J. Lyon to enlist to the credit of the town of Winhall, Vt., nine men, and have them mustered into the United States' service, to apply on the quota of said town, under the last call of the President for three hundred thousand men.

CHAS. R. WILLIAMS, <i>Selectmen</i><br>JONAS HILL, <i>of Winhall.</i>

On the 14th day of February, 1865, General Order No. 7 was issued from the office of the Adjutant and Inspector General of the State of Vermont, and under that order a new assignment of quotas of the several towns in the state was made, the quota thereby assigned to said town of Winhall, under said call of the President for 300,000 men, being six, instead of nine as under the former assignment.

On the 21st day of February, the said Charles R. Williams and ———— Taylor, then selectmen of Winhall, went to Rutland and notified Cramton and Lyon of the reduction of their quota from

nine to six, and that they did not want more men enlisted than enough to fill their quota.

It appeared that Cramton and Lyon had, immediately after making the contract hereinbefore stated to have been made on the 9th day of February, 1865, taken measures to procure the requisite number of men, according to said contract, and that the business was done in the following manner: They made arrangements with parties in Boston to procure men there to enlist in the United States Navy, to be credited upon the quotas of the defendant town, and of the other towns for which they had engaged to furnish recruits. The men so procured were sent from Boston to the Provost Marshal's office in Rutland, and there examined. A descriptive list was made in said Provost Marshal's office, and the men were then sent back to Boston, and were then enlisted into the navy to the credit of the town, and a certificate of such enlistment returned to the said Provost Marshal's office. The said Quinn staid in Boston, and paid the amount agreed upon to the men there.

Cramton, Lyon and Quinn were, at the same time that they were engaged in so raising men for the town of Winhall, also engaged in raising men for several other towns in the state, and it did not appear that they bargained with the parties in Boston, through whom the business was transacted, for any specific men for any town, but only for such number as might be required in each case.

It appeared that some time would necessarily elapse, after the men were engaged, before they could be finally mustered into the service of the United States, but precisely how long did not appear.

The said Cramton, Lyon and Quinn procured, in the manner stated, nine men, who enlisted into the navy of the United States, at Boston, Mass., to the credit of the town of Winhall: one Feb. 16th, three Feb. 18th, one Feb. 20th, one Feb. 23d, one Feb. 24th, one Feb. 27th, and one March 4th, 1865.

The defendant town paid said Cramton, Lyon and Quinn, Feb. 9th, 1865, $3,200, and Feb. 21st, 1865, $1,400, and on the 4th day of May, 1865, the then selectmen of said town made their orders on the town treasurer, one in favor of said Cramton, one in favor of said Lyon, and one in favor of said Quinn, for $1,147 each, in full settlement of the balance due them for the enlistment of nine men to fill the quota of said town, as first assessed, and under the agreement of Feb. 9th, 1865, which orders were, on the same day, presented to the town treasurer for payment, and payment refused for want of funds.

Said orders were, on the          day of August, afterwards passed over by said Cramton, Lyon and Quinn to the plaintiff, in part payment of property purchased by them of him, and were received by him in good faith at their full value.

Payments have been made by the defendants to the plaintiff on said orders to the amount of $2,225, leaving a balance due thereon.

Prior to February 21, 1865, the time when said Cramton and Lyon were notified by the selectmen of the town of the change in the quota, they, the said Cramton, Lyon and Quinn, had, on the strength of the contract made with said selectmen, Feb. 9, 1865, entered into an engagement with said parties in Boston to furnish nine men for said town, and had obligated themselves to receive and pay for that number, and they so informed said selectmen on said 21st of February, 1865.

The report also embraced subsequent votes of the town to raise money to pay their indebtedness created by borrowing money to pay town bounties, and to pay the general indebtedness of the town.

The cause was heard at the March term, 1869, STEELE, J., presiding, upon the report of the referee. The court *pro forma* rendered judgment for the plaintiff for the amount remaining unpaid of the orders in suit, as found by the referee, to which the defendant excepted.

*Charles N. Davenport*, for the defendant.

*Dunton & Veazey*, for the plaintiff.

The opinion of the court was delivered by

PIERPOINT, C. J. It appears from the report of the referee, that under the call of the president of the United States, for 300,-000 men, issued on the 19th of December, 1864, the quota of men to be furnished by the defendant town, as assessed by the provost marshal for the district, was nine. This, it is conceded, was the true number for the town to furnish, of the whole number then required of the state of Vermont.

On application to the general government, by the authorities of the state, the number of men required of the state was reduced. The effect was to reduce the quota of the defendant town to six men; but before the reduction, the town by vote authorized their

selectmen to raise the number of men sufficient to fill their quota and to pay such men such sum as they in their discretion should see fit. At the time this vote was passed, the town and the selectmen understood that the town was required to furnish nine men ; hence the vote contemplated and authorized the selectmen to procure that number. The selectmen at once made a contract with Cramton, Lyon & Quinn, to furnish that number for the town. This contract, being made with full authority on the part of the selectmen, was binding upon the town. Cramton and his associates made arrangements with parties in Boston to obtain the required number of men for the town. After this the quota was reduced as aforesaid, and the selectmen, after a part of the men had been procured, notified Cramton and his associates of the reduction of the quota, and "that they did not want more men enlisted than enough to fill their quota," Cramton at the same time informing the selectmen of the engagements which he and his associates had entered into in respect to procuring the men. Nothing more was said on the subject, and Cramton and his associates proceeded to obtain the number of men according to the contract, and they were mustered in to the credit of the town.

The contract being a valid and binding contract at the time it was made, the selectmen could not change it without the consent of the other party, and if they refused to carry it out according to its terms, the town would be liable for all damages that might ensue to the other party.

At the time of the interview between Cramton and the selectmen, they did not repudiate the contract, or refuse to carry it out, or prohibit his procuring more than six men ; they simply gave notice that they did not want but six, seemingly leaving it optional with Cramton and his associates to furnish six men or nine. The selectmen apparently acted upon that idea after the contract had been performed by the other party. They ascertained and adjusted the balance due, and drew orders on the treasurer of the town for the amount. In doing this, they acted not only within the scope of their general authority as selectmen, but within the special authority conferred by the vote. They did not create a liability against the town by drawing these orders. They were only

providing for the payment of an existing debt, and that in the ordinary mode by which debts against towns are paid.

When these orders were drawn and delivered to the payee, they constituted a debt against the town, to which upon the facts reported by the referee the town had no legal defense. The order being negotiable in this state, as is conceded, the action is properly brought in the name of the present plaintiff as the owner and holder.

This view of the case renders it unnecessary to inquire as to the effect of the orders being past due at the time they were transferred.

Judgment affirmed.